UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-10157-RGS

PETER J. MAINI

v.

TOWN OF NORTON,
PATROLMAN JOSHUA E. ARCHER,
PATROLMAN SEAN P. MAHONEY, AND
PATROLMAN JOHN P. WORRELL

MEMORANDUM AND ORDER
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

August 25, 2023

STEARNS, D.J.

Peter Maini brought this action against the Town of Norton and Norton Police Department officers Joshua Archer, Sean Mahoney, and John Worrall. The Complaint sets out thirteen counts: Counts I through VII are Fourth, Fifth, Eighth, and Fourteenth Amendment excessive force claims against the defendants under the Federal Civil Rights Act, 42 U.S.C. § 1983; Counts VIII through X are claims against the defendants under Articles XII and XIV of the Massachusetts Declaration of Rights; while Counts XI through XIII assert common-law claims of false arrest. Defendants now move for summary judgment on all counts pursuant to Fed. R. Civ. P. 56(a).

## BACKGROUND

In the light most favorable to Maini as the non-moving party, the material facts are as follows. On May 4, 2019, Town of Norton police officers Archer, Mahoney, and Worrall received dispatches within fifteen minutes of one another reporting earlier calls to enforcement about two separate disturbances. The first, at around 5:43 p.m., was a report that a male had urinated on a vehicle in the parking lot of Michelle's Corner Store. The second, made at around 6:00 p.m., was a complaint from a resident at 15 Norton Glen Road that a male had been yelling at her children for playing outside.

Worrall arrived at Michelle's Corner Store and spoke with the property owner, who showed him video surveillance footage of the owner of a gray convertible purchasing alcoholic nips and then urinating in the parking lot. By speaking to the store's cashier and employees of the bar across the street, Worrall identified Maini to be the man in question. Worrall then ran Maini's name through a database, which returned his address as 15 Norton Glen Road.

While Worrall was at Michelle's Corner Store, Archer and Mahoney were dispatched to respond to the second reported disturbance, a dispute between neighbors at 15 Norton Glen Road. Worrall recognized the address

and told Archer and Mahoney to look out for a gray convertible.  Worrall then drove to 15 Norton Glen Road to assist Archer and Mahoney.

Archer and Mahoney state that the resident who had called 911 to report the second disturbance, Ashley Gilbert, was visibly upset and crying when they arrived.  Gilbert told them that Maini had come outside and yelled at her children for making too much noise while playing outside.  Maini admits that he told one of Gilbert's children, "I'm not going to have problems with you all summer like I did last year," and that, when Gilbert told him not to talk to her children, he responded, "well[,] discipline your kids."  Pl.'s Opp'n to Mot. to Dismiss [Dkt # 35] at 7-8.  Maini claims that that was the extent of his interaction with her.

The police approached Maini at his home, where Maini confirmed his identity and his interaction with Gilbert's child.  Worrall arrived while Mahoney was speaking to Maini and identified Maini as the man caught urinating in the Michelle's Corner Store surveillance video.  The police told Maini that they would be taking him into protective custody.  Maini states that he told the police that if they were not arresting him, he would not go with them, after which the police handcuffed Maini.  Maini alleges that the police got "rough" with him, dragging him out of his house by his arm and then throwing him on the hood of his car, kneeling on his back, and then

3

placing handcuffs on him.  Defendants note that Maini was yelling while being handcuffed and during his transport to the police station.  Maini was left in the police cruiser for about a half hour on a hot day, during which period he was screaming to be let out of the car.

Two days after his encounter with the police, Maini went to the emergency room and reported soreness in his sides and lower back and bruising on his forearms and wrists.  A few weeks later, medical records from May 31, 2019 indicate that Maini experienced neck and rib pain, bruising on his right flank, and rib, vertebrae, and chest fractures.  Maini alleges that these injuries were caused by defendants' May 4, 2019, encounter and now seeks compensatory damages under theories of excessive force and false arrest under federal and state law.

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings and available evidence, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  For a dispute to be "genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side."  *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d

731, 735 (1st Cir. 1995) (citation omitted).  However, "'the mere existence of a scintilla of evidence' is insufficient to defeat a properly supported motion for summary judgment." *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## I.   Maini's Excessive Force Claims (Counts I-VII)

To successfully state a section 1983 claim, plaintiff "must show a deprivation of a federally secured right." *Harrington v. City of Nashua*, 610 F.3d 24, 28 (1st Cir. 2010).  Maini brings Fourth, Fifth, Eighth, and Fourteenth Amendment claims against each defendant under section 1983 premised on the officers' excessive force when detaining him.[1]  The court will address the claim against the Town of Norton and the individual defendants in turn.

### a. *Municipal Liability Against the Town of Norton*

Plaintiff's claim against the Town of Norton amounts to a *Monell* claim alleging municipal liability for a flawed police training program that resulted

---

[1]   The First Circuit has held that placing an individual in protective custody pursuant to Mass. Gen. Laws Ch. 111B can constitute an unlawful seizure under the Fourth Amendment.  *See Veiga v. McGee*, 26 F.3d 1206, 1214 (1st Cir. 1994) ("Because Chapter 111B did not authorize officers to detain Veiga for the *manner* in which he expressed himself, a detention for that reason would amount to an unlawful seizure under the Fourth Amendment and Veiga could therefore establish a Section 1983 violation.").

in constitutional harm to Maini. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). More specifically, Maini alleges that the Town of Norton, "over a period of years, allowed its police force to routinely and as a matter of practice, use excessive force during the arrest and/or taking into taking into protective custody . . . causing great and repeated harm to its citizens." Am. Compl. ¶ 35.

A municipality "causes" a constitutional injury by implementing a constitutionally unsound policy, ordinance, or regulation, or by condoning an unconstitutional custom or practice "so widespread as to have the force of law." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); *see also Monell*, 436 U.S. at 690-691. The policy must be a product of deliberate or conscious choice on the part of the governmental body's "lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* at 694. A plaintiff must not only show that the municipality implemented or condoned the custom or policy, but also that the custom or policy "actually caused" the constitutional injury. *City of Canton v. Harris*, 489 U.S. 378, 391 (1989).

Deficiencies in the design and implementation of police training programs may give rise to municipal liability only in those "limited circumstances" where the need for more or different training is so obvious

that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390-391. Moreover, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *Id.* at 391. A plaintiff must therefore show that a specific deficiency in a training program was the "moving force" that caused the constitutional injury. *Id.* In sum, the allegations of deficient training must "be aimed at" the individual officers committing the alleged constitutional violation. *Young v. City of Providence*, 404 F.3d 4, 26-27 (1st Cir. 2005).

Maini has failed to provide any evidence that any Norton municipal policy or practice (or lack thereof) was the cause of the officers' alleged indifference to his constitutional rights. He also has not proffered any pattern, history, or single other instance of similar constitutional violations by Norton police officers. *See Brown*, 520 U.S. at 409 ("Nor will it be readily apparent that the municipality's action caused the injury in question, because the plaintiff can point to no other incident tending to make it more

likely that the plaintiff's own injury flows from the municipality's action, rather than from some other intervening cause."). Accordingly, the court will grant summary judgment in favor of defendants on Count I.

### b. Individual Liability Against Officers Archer, Mahoney, and Worrall

To state a cause of action under section 1983, plaintiff must establish that he is suffering a direct and current injury as the result of defendants' conduct. *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 41 (1991). Maini has not offered evidence (other than his personal assessment) that his neck, chest, rib, and vertebral injuries appearing on May 31, 2019 were caused by the officers' alleged conduct on May 4, 2019. Maini's May 6, 2019, emergency room records indicate that Maini had some tenderness and bruising in his wrists and lower back but did not mention the more severe injuries Maini attributes to defendants' conduct. *See* Maini 5/6/2019 Medical Records [Dkt # 29-7]. Maini's medical records only mention fracturing and severe injury several weeks after his encounter with the defendant officers. *See* Maini 5/31/2019 Medical Records [Dkt # 29-8]. His medical records alone do not establish causation, particularly where there is contradictory evidence that Maini may have suffered a fall the day before his May 31, 2019 hospital visit that could have resulted in similar injuries. *See* 6/3/2019 Police Report [Dkt # 29-9] (police report of May 31, 2019 police

response to a call from Maini's wife, who mentioned that Maini suffered a fall the day prior).

Where a causation inquiry involves questions of medical science, expert testimony is required to assist the jury. *See Held v. Bail*, 28 Mass. App. Ct. 919, 920 (1989). Whether Maini's diagnosis on May 31, 2019 may be attributed to the alleged altercation weeks prior is a medical question and falls outside the purview of a juror's common sense. But Maini's belated use of an expert report, with still no notice of intention to use an expert five months after the court's deadline, has been stricken from the record. Maini served defense counsel with an expert report from a non-treating physician on causation, but the court struck the report because it was provided to defense counsel over five months after the court set a deadline for the parties to submit notice on the docket whether they intend to use an expert (further, plaintiff still has yet to be report the intention of use of an expert, or the expert report, on the docket as required by the court). *See* 8/24/2023 Order [Dkt # 37] (striking late expert report); *see also* 12/1/2022 Order [Dkt # 16] (setting February 13, 2023 deadline for notice of intention to use an expert); 3/31/2023 Order [Dkt # 19] (permitting trial to be rescheduled but declining to extend deadlines); 6/23/2023 Order [Dkt # 26] (confirming February 13, 2023 deadline for noticing any use of experts). Without any evidence

indicating that defendants' alleged conduct caused Maini's injury, Maini's claim cannot proceed.  The court will grant summary judgment in favor of defendants on Counts II-VII.

Although the court dismisses these claims on the ground of lack of causation, the court also has doubts that the officers' use of force was unreasonable under the circumstances.  Excessive force claims are governed by the Fourth Amendment's reasonableness standard.  *See O'Brien v. Town of Bellingham*, 943 F.3d 514, 530 (1st Cir. 2019).  Reasonableness is "judged from the perspective of a reasonable officer on the scene."  *Graham v. Cummings*, 490 U.S. 386, 396 (1989).  The most that is plausibly alleged here is that the police used force in restraining an admittedly resistant and possibly intoxicated Maini while taking him into protective custody by "[getting] rough" with him and then kneeling on his back while handcuffing him.  Pl.'s Opp'n to Mot. for Summ. J. (Pl.'s Opp'n) [Dkt # 36] at 9.  The court will address the "rough housing" and kneeling separately.

With respect to the officers' alleged roughness in restraining Maini, it must be remembered that the Fourth Amendment does not bar an officer's use of force in executing his or her duties.   Rather what the Fourth Amendment forbids is the *excessive and unnecessary* use of force by police.

In *Saucier v. Katz*, 533 U.S. 194 (2001), a qualified immunity case involving allegations of the excessive use of force in restraining an unruly crowd of demonstrators protesting an appearance by the Vice President, the Supreme Court, while admitting the possibility of a constitutional violation, could find no "clearly established" rule – indeed, no rule at all – prohibiting an officer from using force, including an alleged "gratuitously violent shove," in restraining a demonstrator whom he reasonably believed posed a physical threat to the Vice President.  "We have approved the observation that '[n]ot every push or shove, even if it may seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'" *Id.* at 209, quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see Lachance v. Town of Charlton*, 368 F. Supp. 3d 231, 243 (D. Mass. 2019) ("[P]recedent in the First Circuit suggests that forcefully pushing a resistant plaintiff to the ground is not excessive."); *Salmon v. Blesser*, 802 F.3d 249, 253 (2d Cir. 2015) (an officer may, without effectuating a Fourth Amendment "seizure," take a person by the elbow or use comparable guiding force to gain compliance with an order to "move on"); *see also Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) (trial court erred in refusing to grant qualified immunity where plaintiff could point to nothing ambit of reasonableness).

The First Circuit has found that kneeling on the back of a restrained individual is unreasonable. *See McCue v. City of Bangor*, 838 F.3d 55, 64 (1st Cir. 2016) ("[I]t was clearly established in September 2012 that exerting significant, continued force on a person's back while that [person] is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force.") (internal quotations and citations omitted); *Lachance*, 368 F. Supp. 3d at 240-242 ("I find it was clearly established that Plaintiff had a constitutional right to be free from an officer kneeling on his back after he had been restrained.").

Maini's allegations that the Norton officers kneeled on his back present a closer question. *See* Pl.'s Opp'n at 9 ("They threw me on the hood of my car . . . and then they knelt on my back and put the handcuffs on me."). Placing a knee or hand on the back of a resisting suspect while applying handcuffs is not a *per se* impermissible police technique, but in the court's understanding, is a standard procedure taught at police academies when dealing with a resisting suspect. What is not permitted is kneeling on a person's neck, as in the George Floyd case, which risks asphyxiation, or continuing a knee hold after a suspect has been subdued and restrained. This is what distinguishes *Lachance* and *McCue*. In those cases, the First Circuit took note of district court findings that that the offending knee holds were

applied *after* the detainees had been subdued.  *See, e.g.*, *Lachance v. Town of Norton*, 990 F.3d 14, 22 (1st Cir. 2021) ("[I]t was clearly established that [Lachance] had a constitutional right to be free from an officer kneeling on his back after he had been restrained.).

## II.   Maini's State Law Claims (Counts VIII-XIII)

Maini's state claims are dismissed without prejudice because the court no longer has any anchoring federal claims with which to exert supplemental jurisdiction.  The court will dismiss these claims without prejudice.

## ORDER

For the foregoing reasons, the court will <u>ALLOW</u> defendants' Motion for Summary Judgment for Counts I through VII and will dismiss the remaining counts for lack of jurisdiction.  The Clerk will enter judgment for defendants and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE